# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re Ajay N. Dabhi f/d/b/a Shree Balaji Corp., <br><br> Debtor | Case No.: 13-42528hjb <br><br> Chapter 7 |
| Jigisha Patel <br><br> Plaintiff, <br><br> vs. <br><br> Ajay N. Dabhi f/d/b/a Shree Balaji Corp., <br><br> Defendant. | Adversary Proceeding <br><br> Case No.:_____ |

## COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

The Plaintiff, Jigisha Patel ("Plaintiff" or "Patel"), a creditor and party in interest in the above referenced bankruptcy case, files this Complaint to Determine Dischargeability of Debt under 11 U.S.C. § 523, and in support thereof respectfully sets forth the following:

### PARTIES

1. The Plaintiff, Jigisha Patel (hereinafter the "Plaintiff"), is an individual having a usual place of abode in Spring Lake Heights, New Jersey.

2. The Defendant/Debtor, Ajay N. Dabhi (hereinafter the "Debtor"), is an individual having a last and usual place of abode at 3 Baldwin Circle, Shrewsbury, Worcester County, Massachusetts.

## JURISDICTION AND VENUE

3. This adversary proceeding arises and is related to the above-referenced Chapter 7 case, currently pending in this District.

4. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b)(2)(I) and 1334(b). This is a core proceeding.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

## FACTS COMMON TO ALL COUNTS

6. The Plaintiff reavers and realleges the allegations contained in Paragraphs 1 through 5 above as if fully set forth herein.

7. In or around 2001 the Plaintiff met the Debtor who at the time was living in Massachusetts and commuting to New Jersey. Plaintiff allowed the Debtor to stay at her apartment three days a week.

8. In exchange for boarding at the apartment for three days a week and for meals, the Plaintiff charged the Debtor $200 a month.

9. During the period of time beginning in 2001 through 2004 the Debtor began to promise the Plaintiff a better life.

10. The Debtor began taking the Plaintiff out for expensive dinners and drinks and telling her how she too could live a lavish lifestyle.

11. The Debtor knowing the Plaintiff was unmarried would say "you don't have a husband, I will help you out."

12. Towards the end of 2004 and beginning of 2005 the Debtor persuaded the Plaintiff to give him money to start money a business for her benefit.

13.    Eventually, the Plaintiff gave the Debtor $150,000, to begin a business that they would be partners in.

14.    In or around 2005, after several years, the Debtor persuaded the Plaintiff to cease collecting the $200 a month for to show her commitment to the business and partnership.

15.    At some point in 2005 the Plaintiff and her family planned a trip to India.  The Debtor expressed his desire to join them on the trip to India.

16.    The Debtor persuaded the Plaintiff to pay for the Debtor's travel expenses to accompany them on the trip to India.  The Debtor told the Plaintiff that by her paying for his travel expenses showed "commitment to the partnership."

17.    Prior to going on the trip to India the Plaintiff requested that the Debtor acknowledge in writing that she had given him $150,000 to start the business.

18.    The Debtor refused to put any of the details of the transaction in writing.

19.    During the year of 2005, the Debtor had not used any of the money to start a business as he represented to the Plaintiff.

20.    At some point in 2006 the Plaintiff and her family planned another trip this time to Florida.  The Plaintiff planned to fly to Florida and stay with family, but the Debtor objected.

21.    The Debtor would not allow them to fly to Florida instead, without being invited, joined the trip and drove the Plaintiff and her family to Florida.

22.    During the drive to Florida the Debtor used his luxury car to show off for the Plaintiff. He continued to tell the Plaintiff about all of the things she could have once the business was up and operating.  As a result the Plaintiff wanted the Debtor's lifestyle even more.

23. While on the trip to Florida the Plaintiff again requested that the Debtor acknowledge in writing the receipt of the $150,000, but this request resulted in a verbal argument between the parties.

24. After the trip the Debtor and another man Vimal Reddy formed a liquor store, Buy-Rite Liquors in Cranbury, New Jersey.

25. The Debtor used the Plaintiff's money as his half of the initial investment into the business with Mr. Reddy.

26. Although there was no formal paperwork given to the Plaintiff she believed that she was partners with the Debtor and Mr. Reddy, but in reality the Debtor and Mr. Reddy had an agreement that excluded the Plaintiff from ownership and control of the business.

27. The business operated for approximately six months before the Debtor and Mr. Reddy began to argue about it.

28. As a result of the Debtor's disagreement with Mr. Reddy a buyout was reached.

29. Mr. Reddy bought out the Debtor and returned the Plaintiff's $150,000 that the Debtor used as his portion of the initial investment.

30. The Debtor deposited the $150,000 into his personal bank account out of the reach of the Plaintiff.

31. The Plaintiff demanded the return of the $150,000 from the Debtor, but he refused to give it back at that time.

32. The Debtor continued to tell the Plaintiff that he would give her the money back, but he never paid it back in full.

33. The Debtor eventually began to return small amounts to the Plaintiff over time totaling $70,000.

34. In or around September of 2007, the Plaintiff requested that the Debtor acknowledge receipt of the $150,000 in writing.

35. On or about September 28, 2007, the Debtor signed a Note acknowledging that he received $150,000 from the Plaintiff.

36. At the time the Debtor signed the Note he said to the Plaintiff "I will write this for your but this does not mean anything you will never get your money back."

37. The Debtor had no intention of returning the remaining money to the Plaintiff.

38. In or around 2009 the Plaintiff went to work at the Debtor's liquor store. It was at this time the Plaintiff learned of the Debtor's new cars and house.

39. The Plaintiff was infuriated that the Debtor had used her money to purchase cars and a house for himself, but refused to repay the remaining $80,000. The Plaintiff and the Debtor engaged in a verbal altercation about the money.

40. Eventually the Debtor cut off all communication with the Plaintiff.

41. For the entire year of 2010 the Plaintiff had little or no contact with the Debtor.

42. In or around 2011 the Plaintiff's father passed away. The Debtor came to say his final goodbye to him.

43. At this time the Plaintiff confronted the Debtor about the money, but the Debtor indicated that the Plaintiff would never get the money back.

44. On or about January 27, 2011 the Plaintiff filed a two count Complaint in the United States District Court for the District of New Jersey seeking damages for Breach of Contract and Conversion.

45. The Debtor, appearing pro se filed an Answer to the Complaint denying the allegations.

46. On or about July 23, 2011 the Plaintiff filed her Motion for Summary Judgment, which was eventually granted.

47. Judgement entered on January 18, 2012 in the amount of $80,000, together with interest and costs.

48. On or about March 30, 2012 the Plaintiff registered her Judgment with the United States District Court for the District of Massachusetts in an attempt to collect the judgment from the Debtor.

49. On or about October 1, 2013, the Debtor filed Chapter 7 Bankruptcy protection.

50. In his Chapter 7 Petition the Debtor scheduled the pre-petition debt owed to the Plaintiff as a personal loan.

## COUNT I – EXCEPTION FROM DISCHARGE
### [28 U.S.C. 523(a)(2)(A)]

51. The Plaintiff reavers and realleges the allegations contained in Paragraphs 1 through 50 above as if fully set forth herein.

52. On or about October 1, 2013 (hereinafter the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to Chapter 7 of the Bankruptcy Code.

53. Pre-Petition, in or around 2005 the Debtor solicited money from the Plaintiff to start a business for them that could deliver her a lavish lifestyle.

54. The Plaintiff relying on the Debtor's representations loaned $150,000 to the Debtor for the purpose of starting a business for her.

55. The Debtor had no intention of using the money to benefit the Plaintiff instead he was motivated by personal gain.

56. Eventually in or around 2006 the Debtor used the Plaintiff's money to start a business with a third-party Vimal Reddy.

57. Against his representations the Debtor used the Plaintiff's money as his half of the initial investment into the business with Mr. Reddy, a business that Plaintiff obtained no interest in and derived no benefit from.

58. The business was a liquor store called Buy-Rite Liquors.

59. The Debtor's agreement with Vimal Reddy excluded the Plaintiff from holding any stock in or controlling Buy-Rite Liquors in any nature.

60. Six months after the formation of Buy-Right Liquors the Debtor and Vimal Reddy began to argue over the business.

61. Vimal Reddy agreed to buy out the Debtor by returning his initial investment of $150,000.

62. The Debtor deposited the $150,000 into his bank account.

63. The Plaintiff demanded return of the money as it was not used for its intended purpose as represented by the Debtor.

64. The Debtor returned approximately $70,000 to the Plaintiff in small increments spread out over several months.

65. The Debtor continually maintained control over the $150,000 and kept it out of the reach of the Plaintiff.

66. After numerous demands the Debtor eventually acknowledged receipt of the $150,000 in writing.

67. Despite this acknowledgement the Debtor indicated that the Plaintiff would never receive the money back.

68. The Debtor used the money to purchase cars and a house for himself.

69. The Debtor wrongfully exercised dominion and control over the money.

70.   The foregoing acts of the Debtor were knowingly committed and calculated to deprive the Plaintiff of her money for the Debtor's personal gain and enjoyment.

71.   As a result of the Debtor's wilful conduct the Plaintiff has sustained damages and continues to sustain damages as a result of the Debtor's actions.

72.   The Plaintiff demands that this Court issue an Order declaring and adjudging that the Debtor's indebtedness to the Plaintiff is excepted from Debtor's discharged based on his fraudulent actions in an amount to be determined by the Court following a hearing on assessment of damages, but in no less than $80,000.

## COUNT II – EXCEPTION FROM DISCHARGE
### [28 U.S.C. 523(a)(4)]

73.   The Plaintiff reavers and realleges the allegations contained in Paragraphs 1 through 72 above as if fully set forth herein.

74.   The Plaintiff was an unmarried and unsophisticated business person.

75.   The Debtor represented that he was a successful businessman and had the skills to open a business that would provide the Plaintiff with a better life.

76.   The Plaintiff believed the Debtor could provide this for her because of his experience running a convenience store and the fact that he himself had a luxury car and a nice house.

77.   The Debtor assured the Plaintiff that if she gave him the $150,000 that he would use it to better her life and help her out, because she did not have a husband.

78.   The Plaintiff relied on the Debtor's representations and gave him $150,000 to use to start a business.

79.   The Plaintiff placed her trust in the Debtor to act in a manner that would benefit her.

80.   The Debtor used the Plaintiff's money to pay for his half of the investment to open a liquor store with a third-party Vimal Reddy.

81.    The Plaintiff never received any stock, profits or benefits from the business or the Debtor.

82.    The Debtor and Mr. Reddy were the only owners and shareholders of the business.

83.    Six months after forming the business Mr. Reddy bought out the Debtor and returned his initial $150,000 investment.

84.    The Debtor had no intention of starting a business for the Plaintiff.

85.    The Debtor had no intention of using the $150,000 he received from the Plaintiff for her benefit.

86.    The Debtor solicited the $150,000 from the Plaintiff for his personal use and enjoyment.

87.    Despite Debtor's representations to the contrary he never formed a business for the Plaintiff.

88.    Eventually the Debtor acknowledged receipt of the $150,000 in writing, but indicated that the Plaintiff would never get the money back.

89.    The Debtor used the money to purchase cars, a home, and start a new liquor store business that the Plaintiff held no ownership in.

90.    The Debtor persuaded the Plaintiff to work at his new liquor store to gain trust and to show her further commitment to the partnership.

91.    The Plaintiff relying on the Debtor's representations took the position in hope that she would one day receive the remaining money back from the Debtor or ownership in the business.

92.    The Debtor's false representations were material and were made by the Debtor with the intention of inducing the Plaintiff to rely on them.  Plaintiff reasonably and justifiably relied on the Debtor's representations by tendering the $150,000 to the Debtor to open a liquor store business.

93.     The Plaintiff was unaware of the falsity of the Debtor's representations and did not know the Debtor's true intentions.  Debtor knew that the representations were material and deceptive when he made them and continued to conceal his true intentions when he was bought out by Mr. Reddy.

94.     The Debtor knew that the Plaintiff was vulnerable to his solicitation of the money as he had taken months to gain her trust and friendship.

95.     The Debtor was intrusted with the Plaintiff's $150,000 for the purpose of opening a business for the Plaintiff, but the Debtor contrary to his representations used the money to better himself at the cost to the Plaintiff.

96.     As a direct and proximate result of the Debtor's actions the Plaintiff has been damaged in an amount exceeding $80,000.

97.     The Plaintiff is informed and believes and therefore alleges that by perpetrating the above described actions, the Debtor acted in a conscious disregard of the Plaintiff's rights with the intent to cause her cruel and unjust hardship.

98.     The Debtor acted in a despicable manner, intended to vex, injure and annoy the Plaintiff while enriching himself.

99.     The Plaintiff demands that this Court issue an Order declaring and adjudging that the Debtor's indebtedness to the Plaintiff is excepted from Debtor's discharged based on his fraudulent actions in an amount to be determined by the Court following a hearing on assessment of damages, but in no less than $80,000.

**THE PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES SO TRIABLE**

**WHEREFORE,** Jigisha Patel demands that this Court issue an Order:

a. Declaring and adjudging that Dabhi's indebtedness to Patel is excepted from Dabhi's discharge pursuant to 28 U.S.C. § 523(a)(2)(A) and 28 U.S.C. § 523(a)(4);

b. Enter a money judgment in favor of Jigisha Patel in the amount of $80,000 together with interest from October 15, 2010, and court costs; and

c. Enter such further relief that this Court deems just and proper.

Respectfully submitted,

JIGISHA PATEL

By her attorneys,

Date: January 3, 2014

/s/ John J. Dussi, Esq.
John J. Dussi BBO #546355
jdussi@cohnanddussi.com
Stephen C. Garabedian BBO# 681522
sgarabedian@cohnanddussi.com
COHN & DUSSI, LLC
500 West Cummings Park, Suite 2350
Woburn, MA 01801
(781) 494-0200